BIGGERS, *alias* WATSON, *v.* THE STATE.

No. 7794. DECEMBER 13, 1930.

*Louis H. Foster, Fred E. Harrison,* and *John H. Payne,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. Walter LeCraw, E. A. Stephens,* and *John H. Hudson,* contra.

PER CURIAM. Will Biggers was tried upon an indictment charging him with the murder of Frank Marlin by shooting him with a pistol. The jury returned a verdict of guilty, without a recommendation.

When the case was called for trial, and before the prisoner was arraigned, he filed a motion for a change of venue, and for a continuance. The motion for a change of venue was based upon the ground that an impartial jury could not be obtained to try the defendant at the time and place when and where the case was called for trial, for the following reasons: (a) That the jurors selected to try him will have to be taken from the panels drawn and empaneled on November 4, 1929. (b) That on November 5, 1929,

the Atlanta Constitution, a daily newspaper published in said county and with a general circulation, published a false and malicious account of a former proceeding in this court when this defendant was tried on a prior date, a copy of said false and malicious report of said former proceeding being attached to the motion as an exhibit. (c) That said report is false, in that it states: "In the first trial, three weeks ago, it was reported that two of the twelve jurors voted for a life sentence for Biggers, while the remaining ten were for the death penalty." It is alleged in the motion that the statement as to how the jurors stood is not true; that the jurors now empaneled, and from which the defendant must select a jury to try him, have read the newspaper article referred to; and that the same is calculated to and will influence the mind of an impartial juror; and for this reason the accused can not, at this time, while said article is fresh in the minds of the jurors, have a fair and impartial trial, as he is entitled to receive under the constitution and laws of this State. To this motion the defendant adds a prayer that he be "granted a continuance or a change of venue, that he may obtain an impartial jury to try him unhampered by such false and vicious propaganda as is in such newspaper article contained." The newspaper article referred to was as follows:

"Will Biggers, negro escaped convict, confessed slayer of Frank Marlin, a railroad engineer, will go on trial for his life before a jury in Judge Edgar E. Pomeroy's division of the Fulton superior court this morning. It will be the second trial for Biggers, the jury in the first case failing to reach a decision on punishment to be meted out. In the first trial, three weeks ago, it was reported that two of the twelve jurors voted for a life sentence for Biggers, while the remaining ten were for the death penalty. Marlin was slain on September 7th, while walking through a wooded area near an abandoned reservoir at the west end of Parson Street. Biggers was arrested two days after the killing, and immediately confessed to detective John W. Lowe, who will be the State's chief witness at the trial beginning today."

Counsel for the accused, in support of the motion, offered to introduce in evidence testimony of members of the jury on a former trial of the case, as to how the jury stood regarding their verdict on the trial; and counsel asked the court to allow him

one hour to produce the witnesses to support the contention as charged and alleged in the petition. Counsel at the time stated in his place that the members of the former jury would testify that on the first ballot on the former trial they voted seven for electrocution and five for a recommendation of mercy; and that at the conclusion of their deliberation they stood eight for guilty with a recommendation, and four for a verdict of guilty without a recommendation. Counsel offered to prove by the jurors then empaneled and serving in that division of the court, and who were the jurors from whom would have to be drawn a jury to try the defendant, that the said jurors had read the newspaper article published in the morning issue of the Atlanta Constitution on November 5, 1929, and that said jurors would swear they had read the newspaper article. The motions for change of venue and for continuance, and to allow the testimony offered by the defendant, were denied by the court, and the plaintiff in error excepted pendente lite.

■ The court did not err in overruling the motions for a change of venue and for a continuance. In passing upon both of these motions the court exercised a sound discretion, and it does not appear that that discretion was abused. The publication of the article in a newspaper of wide circulation in the county and the State did not require a finding upon the part of the court that an impartial jury could not be obtained at the time of the trial, that is, on November 5, 1929, a short time after the article in the newspaper referred to was published. And it was not error for the court to refuse to hear evidence offered to show that the former jury were divided upon the question as to whether or not the defendant should be recommended to mercy. The jury trying this case were not concerned with the opinion of the jury that had passed upon the question of the guilt or innocence of the defendant at the first trial. There was no competent proof offered to show that there was prevailing in the county such general excitement and prejudice against the prisoner as would require the case to be postponed to a subsequent date. In the selection of a fair and impartial jury the prisoner was protected by his right to peremptory challenges, and to have the statutory voir dire questions propounded; and if these were not sufficient, the prisoner had his right of challenge to the poll and to have had any juror called to try him put upon the court as a trior and the question of such juror's competency and impartiality thoroughly tested.

■ · While the jury was being selected and before the completion thereof, the court caused to be propounded to the jury from which selections were made to try this movant, "without movant's consent and over his objection," the following question on their voir dire, to wit: "Have you from having read any newspaper article formed or expressed any opinion as to the guilt or innocence of the accused; and have you on account of any newspaper article any bias or prejudice against the prisoner at the bar?" After the propounding of said question by the solicitor-general, the defendant's counsel moved that, in view of the fact that the solicitor-general had asked the question stated above, he be allowed to inquire in connection with the voir dire questions whether or not the jurors had read a special article appearing in the Atlanta Constitution on the morning of November 5, 1929. Counsel added to this motion that he desired the "privilege of reading that article to the jury and inquiring if it has affected their minds in any way." This motion was overruled, and denied by the court. On this issue the Justices are equally divided in opinion. Beck, P. J., and Gilbert and Hines, JJ., being of the opinion that this ruling was not error, and Russell, C. J., and Atkinson and Hill, JJ., being of the contrary opinion, this ruling is affirmed by operation of law.

■ Error is assigned upon the following charge of the court: "In this case the State contends, which the defendant denies, that the defendant made statements amounting to a confession. It will be for you to determine, from the testimony and the defendant's statement, whether such defendant made an admission amounting to a confession. You will determine this from the testimony in the case and from defendant's statement." While the defendant had not actually denied making a confession, he had in his statement substantially claimed that the confession introduced in evidence had not been freely and voluntarily made; and it would have been more accurate if the court had stated to the jury that the defendant denied making a voluntary confession. But the omission of the word "voluntary" here will not be cause for the grant of a new trial. The charge complained of, for the reason pointed out, is not entirely accurate; but it could not have been "misleading or confusing to the jury," as claimed by the movant; especially as the court charged further, in this connection: "I instruct you that to make a confession admissible in evidence it must have been

made voluntarily, without being induced by another by the slightest hope of benefit or the remotest fear of injury; and unless you should believe the confession, if you believe it was made, was made voluntarily, without being induced by another by the slightest hope of benefit or the remotest fear of injury, you should not consider such testimony of such confession in your deliberations at all." If the defendant had desired further instructions upon the requirement of the law that a confession must be freely and voluntarily made, and that it must not be made under fear of punishment or with the hope of reward, and that it was a question for the jury to decide whether, in case a prior confession had been obtained by threats, this influence was still operating upon the defendant's mind when subsequent confessions were made, a written timely request to that effect should have been offered.

■ The court charged the jury in part as follows: "I instruct you, if you find that this accused set out or started out to rob the deceased, and that during such robbery, if he did rob him or attempt to rob him, the deceased was killed by the accused in the manner set forth in the indictment, and if you find any such killing was the natural, reasonable, and probable consequence of any such robbery, or attempt at robbery, then I instruct you that under such circumstances you would be authorized to convict the defendant of the offense of murder." This charge is excepted to upon the ground that it is "calculated to mislead and did mislead the jury, for the reason that same is not a true statement of the law, for the reason that if at any time during an attempt to commit robbery he abandons the design and intent to commit such robbery, and kills in self-defense or under circumstances of justification or mitigation, he would not be guilty of murder." The charge is not error for any reason assigned. There was no evidence to show that at any time during the attempt upon the part of the defendant to commit robbery "he abandoned the design and attempt to commit such robbery and killed in self-defense or under circumstances of justification or mitigation."

■ In the sixth ground of the motion plaintiff in error insists that a new trial should be granted him for the reason, that, while the assistant solicitor-general was arguing the case for the State he said: "It would be useless to convict this man and recommend the accused to the mercy of the court with any assurance that he

would serve for life; for statistics show, but I can't quote statistics, but I will say it is a matter of general information that probably half or a great per cent. of the life convicts either succeed in making an escape or are pardoned by some overly sympathetic Governor." On this issue the Justices are equally divided in opinion. Beck, P. J., and Gilbert and Hines, JJ., being of the opinion that this ruling was not error, and Russell, C. J., and Atkinson and Hill, JJ., being of the contrary opinion, this ruling is affirmed by operation of law.

■ The contention that there is not sufficient evidence in the case to corroborate the alleged confession of movant, and that for this reason a new trial should be granted, is without merit. There was evidence to authorize the conviction, and the confession in the case was amply corroborated.

*Judgment affirmed by operation of law.*