Under the record in this case, the court did not err in denying the application for a change of venue.
 DECIDED APRIL 11, 1946.
This case is based upon an application for a change of venue. On the hearing, the judge of the superior court of Barrow County denied the same. The defendant excepted and brought the case here for review. The defendant introduced only one witness to sustain the application. This was the attorney for the applicant. His testimony was substantially and in a most general way to the effect that he had been a resident of Barrow County for a long number of years, engaged as a practicing attorney. He stated that from what he had heard he could not come to the conclusion that any violence would result to the defendant as a result of a trial. He stated that a Mr. Saunders to whom he had talked stated that he (Saunders) thought that there was a great chance of violence being done the negro if the negro was put on trial in Barrow County. He further stated that no subpoena had been issued for Saunders, due to the fact that Saunders was 86 years old and very nervous. The general effect of the other testimony was that the attorney for the defendant had talked to a Mr. Thomas, who operated a pool room and that Thomas stated that he had heard from time to time customers of his discussing the case in the pool room, and some of them gave it as their opinion that violence might be done the defendant if he were put on trial. Thomas was not subpoenaed *Page 684 
as a witness for the defendant. Thomas could not recall any particular person who had expressed such an opinion, according to the witness.
The State introduced a number of witnesses. The first, a newspaper agent, who delivered Constitutions to numerous customers, stated in effect that he had not heard a first intimation at any time of any threatened violence to the defendant.
The next witness for the State testified: that he was employed at the cotton gin of a mill in Winder; that he was a traverse juror, and had heard no intimation at all of any discussion with reference to any violence for the crime with which the defendant was charged; that the witness saw no reason why the defendant could not get a fair trial, and in effect why the defendant could not receive the full protection of the law from the people of Barrow County.
The next witness testified that he was a citizen of the county, and that he had not heard a single person intimate that any violence would accrue to the defendant growing out of the charge against the defendant, and the trial of it. This witness and one of the others above mentioned knew the deceased, having lived in the same community with him.
The next witness for the State testified that he was a bailiff, and had an intimate and wide acquaintance with the people of the county, and that in the discharge of his duties he had heard no intimation of any violence which might accrue to the defendant.
All of the above witnesses testified without equivocation that the defendant could get a fair trial without any fear of violence being committed upon him.
In addition, the State had subpoenaed and had present twenty-four other witnesses from "all sections of the county," who were ready to testify that the defendant was in no danger of mob violence or any other violence relative to the charge against him.
The sheriff testified that the alleged crime was committed on January 11, 1946; that he arrested the defendant, who had had a cutting affray with a white man; that as a matter of precaution he carried the prisoner to Gainesville, where he kept him until about February 1, and then returned him to Barrow County. The deceased died on February 18. The defendant was later indicted *Page 685 
for murder. While the record does not reveal any of the facts concerning the homicide, it is stated in the brief of counsel for the defendant that the accused received a severe wound on his neck; that the difficulty between the deceased and the accused occurred when the accused walked into a bank. We think that we may accept this statement as having the force of evidence.
When the provisions of this statute (Ga. L. 1911, p. 74; Code, § 27-1201) were here for consideration, this court stated that it had no authority to interfere in such a case when the evidence was conflicting, unless it appeared that the trial judge had abused his discretion. See Wells v. State, 65 Ga. App. 753
(16 S.E.2d 437). We have set out the evidence practically in its entirety as to the material parts, for the purpose of illustrating that there is practically no conflict. These matters must be left to the trial judge, under the statute and under the public weal. He has close contact not only with the attaches of the court, including the solicitor and the sheriff, but with the general public. The community of which Barrow County is constituted is composed of the highest citizenry found anywhere. All of the evidence showed that the conduct of the sheriff in the discharge of his duties was above reproach. There are many comments which could be made concerning the record in this case, but we deem it unnecessary. Suffice it to say that the evidence presented on behalf of the accused does not measure up to the standard which would authorize the court to reverse this case, under the statute.
The defendant cites two decisions in support of his contentions,Johns v. State, 47 Ga. App. 58 (168 S.E. 688), and Redding v. State,38 Ga. App. 38 (142 S.E. 197). We find nothing in either of those cases or in any other case to sustain the contention that the judgment should be reversed.
The court did not err in denying the application for a change of venue for any of the reasons assigned.
Judgment affirmed. Broyles, C. J., and MacIntyre, J.,concur. *Page 686